# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH JONES-CAINGLIT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-05-002-FHS-SPS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant, Deborah Jones-Cainglit, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred, because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step

sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on October 7, 1958, and was 43 years old at the time of the hearing before the ALJ. She has a tenth grade education and past work experience as a

---

[1] Step one requires claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See id.* §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity (RFC) to perform her past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant–taking into account her age, education, work experience, and RFC–can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

mental retardation aide, cashier, order filler, and auto retail clerk. She alleges disability because of depression, chronic obstructive pulmonary disease, and myofascial strain of the lumbosacral spine.

**Procedural History**

The claimant first filed an application for disability benefits under Title II (42 U.S.C. § 401 *et seq*.) and for supplemental security income payments under Title XVI (42 U.S.C. § 1381 *et seq*.) on July 13, 1998. A decision denying benefits was rendered on November 15, 1999. The claimant sought review in this Court, *see Cainglit v. Barnhart*, Case No. CIV-01-506-FHS, and while this case was pending she filed new applications on August 16, 2001, alleging an onset date of August 4, 1997. In a decision dated June 23, 2003, ALJ Dean C. Metry found: (i) that the claimant's prior claim had not been fully adjudicated;[2] (ii) that he could review her current claims only as of November 16, 1999, the day after the prior denial of benefits; and, (iii) that the claimant was not disabled at any time through the date of his decision. The Appeals Council denied review, so the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential process. He found claimant had the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour workday; no limitations for sitting; and not more than occasional stooping. The claimant could perform simple, routine job tasks that were primarily object-oriented tasks, but no detailed or complex tasks. She could engage in superficial interaction with co-workers and supervisors, but not with the general public (Tr. 297). The ALJ concluded that although the claimant could not return to

---

[2] This Court ultimately affirmed the first decision denying the claimant benefits. *See Cainglit v. Barnhart*, Case No. CIV 01-506-FHS (E.D. Okla. Dec. 17, 2002). The claimant appealed but the Tenth Circuit affirmed. *See Cainglit v. Barnhart*, 85 Fed.Appx. 71 (10th Cir. Dec. 17, 2003) [unpublished opinion].

her past relevant work, she was nevertheless not disabled because she could perform work in the regional and national economies, *e.g.*, hand bander, bagger, cleaner/housekeeper, and conveyor line bakery worker (Tr. 299).

**Review**

The claimant asserts that the ALJ erred: (i) by failing to properly evaluate the medical evidence; and, (ii) by improperly analyzing her credibility. The undersigned Magistrate Judge finds the claimant's first contention dispositive.

The claimant contends that the ALJ failed to properly evaluate the medical evidence regarding her mental impairments. She asserts that the ALJ rejected the medical source statement from her treating psychiatrist Dr. Richard Zielinski, M.D. and the mental evaluation from consulting psychologist Annette Miles, Ph.D., without providing specific, legitimate reasons for doing so pursuant to *Langley v. Barnhart*, 373 F.3d 1116 (10th Cir. 2004).

The record reveals that the claimant began mental health treatment at Mental Health Services of Southern Oklahoma in July 1998. She was assessed with major depression and polysubstance abuse and was noted to have hobbies including playing darts, pool, and board games (Tr. 169, 470). The claimant's therapist Jennifer Walker, M.S., noted in January 1999 in a discharge summary that the claimant suffered from depression and polysubstance abuse, had a Global Assessment of Functioning score ("GAF") of 39, took Vistaril and Zoloft, and participated in individual therapy. Treatment had resulted in a slight decrease in depression, but the claimant left the state and did not receive further treatment from the facility until November 1999. Her prognosis was noted to be guarded (Tr. 205). At her therapy session in November 1999, the claimant's mood was described as anxious and she was very tearful. Ms. Walker assigned the claimant a GAF of 50 (Tr. 520). At her December 1999 session, the claimant's mood was pleasant, but she was tearful when discussing the sexual abuse in her past (Tr. 488). By April 2000 the claimant had exhibited psychomotor slowing and

agitation with depressed mood and flat affect (Tr. 517). In May 2000 Ms. Walker discussed the claimant's lack of attendance at her sessions, and the claimant explained she had been sick (Tr. 487). The claimant was described as very depressed in June 2000 with poor concentration and low energy level but fair sleeping and good appetite. Her thought process was slowed and dysarthric, and she had a GAF of 50 (Tr. 449, 514). She was noted to be doing better in August 2000 (Tr. 512). The claimant began seeing therapist Joan Brown, M.S., in September 2000 (Tr. 483). She appeared agitated and nervous at her appointment (Tr. 482). By March 2001, the claimant was described as stable and maintaining (Tr. 478). The claimant continued to be seen for therapy once per month and received medication including Prozac, Vistaril, and Wellbutrin. She was doing well by May 2001 (Tr. 506). In August 2001, however, the claimant was described as tearful, agitated, and shaking. She reportedly had begun drinking alcohol again and had not been taking her medication. Her concentration was poor (Tr. 475). She had several appointments for which she did not show from February 2001 through November 2001, and she was terminated as a patient in April 2002 (Tr. 548).

The claimant underwent a mental status examination with consulting psychologist Dr. Miles on December 5, 2001. Dr. Miles described the claimant as well groomed and cooperative, but she appeared somewhat suspicious. The claimant's affect was somewhat liable and her mood was slightly depressed. She had been depressed for most of her life, did not have any interests, and had a low energy level. The claimant was sleeping poorly and losing weight. Dr. Miles noted that the claimant exhibited several symptoms associated with borderline personality disorder including intense and stormy relationships, numerous impulsive behaviors, suicidal threats, extreme irritability, anger, and emotional emptiness. She reported some auditory hallucinations (a phone ringing when it was not), felt restless all the time, tired easily, and felt irritable and "shakes." The claimant admitted that she had used alcohol heavily and crank in the past, and she smoked three cigarettes per day. Examination

revealed that the claimant was oriented to person, place, time, and purpose and was in touch with reality. She repeated 5 digits forward and backward, knew her personal information, named three recent presidents, and recalled one out three words after five minutes. The claimant could perform single-digit calculations, but she could not subtract 7s from 100. She gave answers to questions posed by Dr. Miles to test her abstract thinking and judgment, and Dr. Miles estimated her IQ to be greater than 80. She assessed the claimant with dysthymic disorder, generalized anxiety disorder, borderline personality disorder and a GAF of 40. She concluded that the claimant was honest in providing information and her condition was not expected to improve significantly within a twelve-month period (Tr. 400-03).

On February 14, 2002, Dr. Zielinski, a consulting psychiatrist at Mental Health Services of Southern Oklahoma, and therapist Joan Brown, M.S., completed a mental status form on the claimant. It indicated the claimant had been diagnosed with major depression and generalized anxiety disorder for four years. She was described as exhibiting constant difficulty attending scheduled activities because of medical problems and had difficulty interacting outside her home. Her ability to interact in an employment setting was significantly diminished from the past. She experienced episodes of crying, acute anxiety, and panic attacks. During a severe panic attack, the claimant would physically shake, her mind would go blank, heart would race, and her knees would get weak. Her long-term memory was described as being poor, but her recent and immediate memory was intact. She had above normal intellectual functioning and was articulate in speech. It was noted her social interaction had diminished over the past four years. She had no outside interaction or hobbies other than refinishing furniture. She depended on her mother for financial, shopping, and cleaning assistance. The claimant was unable to follow complex directions or comprehend complex tasks. She could comprehend simple tasks, but she could not complete them because of anxiety and depression, continued absences from work, and extremely poor concentration. It was expected the claimant would suffer extreme anxiety and poor response

to supervision when interacting with supervisors, and she was unable to maintain long-term relationships with co-workers. The claimant was assessed with major depression (recurrent, severe, without psychotic features), problems with primary support, social environment, other and economic, and a Limitation of Functioning score ("LOF") of 45 (comparable to GAF score) (Tr. 441-42).

The ALJ discussed the mental status form submitted by Ms. Brown and Dr. Zielinski. He noted that the GAF score of 45 was not explained and the diagnosis of major depression (recurrent, severe, without psychotic features) was inconsistent with the diagnoses in the treatment records. He indicated the claimant's depression was consistently found to be "moderate" in severity and that the report failed to mention that the claimant had a substance abuse disorder or a history of substance abuse. The ALJ mentioned that the report depicted the claimant as not having any hobbies other than refinishing furniture, which was limited by her physical problems, when treatment records showed she played pool and board games. In the ALJ's opinion, the report was generated "with the claimant's application for disability payments in mind, and for that exclusive purpose." The conclusions about the claimant's functioning were inconsistent with the treatment records from the clinic, and the report failed to mention the claimant was non-compliant with treatment and the reason for her discharge. For these reasons, the ALJ gave "no weight" to the statements on the mental status form (Tr. 293).

The ALJ also rejected the mental status evaluation conducted by Dr. Miles for numerous reasons. For example, (i) Dr. Miles did not review treatment records to compare the claimant's reported symptoms or functional limitations before reaching her conclusions; (ii) many of the complaints made to Dr. Miles by the claimant, *e.g.*, excessive car accidents, suicide attempts (slitting her wrists), overdosing on pills, were unsupported by medical records and were never reported to her therapist or psychiatrist; (iii) Dr. Miles's assessment of the claimant was based solely on the claimant's self-serving report; and, (iv) the GAF

score was unexplained. The ALJ gave no weight to Dr. Miles's assessment or the GAF score she assigned the claimant because she did not explain her diagnoses and her report did not support them. He further noted she did not assess the claimant with any specific limitations in functioning (Tr. 294-95).

With regard to the opinion from Ms. Brown and Dr. Zielinski, a medical opinion from a treating physician is entitled to controlling weight "if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *See Langley*, 373 F.3d at 1119, *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. The ALJ determined that the conclusions reached by Dr. Zielinski and Ms. Brown on the mental status form were not entitled to controlling weight because: (i) they were inconsistent with the treatment records from the clinic; and, (ii) the assessment was an act of courtesy to the claimant to help her in obtaining disability benefits (Tr. 293).[3]

The undersigned Magistrate Judge finds these reasons unsatisfactory. First, the ALJ mischaracterized some of the inconsistencies between the report and the treatment records. The claimant's treatment records did not show that her depression was ever characterized as "moderate" by her treatment providers as the ALJ indicated in the decision. Further, although the claimant reported hobbies of playing pool and board games shortly after beginning her treatment at the clinic, she later indicated that refinishing furniture was the

---

[3] The Commissioner argues the ALJ was not required to give the opinion any special consideration because Dr. Zielinski was not the claimant's treating physician and Ms. Brown was only a therapist. *See Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003), *quoting* 20 C.F.R. § 416.927(d)(2)(i), (ii) (finding that in order for a treating physician relationship to exist, the physician must have "seen the claimant 'a number of times and long enough to have obtained a longitudinal picture [of the claimant's] impairment.'"); 20 C.F.R. §§ 404.1513(d) and 416.913(d) (noting therapists are not "acceptable medical sources" and are "other sources"). However, it appears from the decision that the ALJ considered Dr. Zielinski to be the claimant's treating psychiatrist when he completed the mental status form, so the undersigned Magistrate Judge will consider the opinion as being one from a treating physician.

only activity she could engage in depending on her physical condition. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*.") [quotations omitted] [emphasis in original]. Second, the ALJ had no basis for his finding that the report was issued for the exclusive purpose of helping the claimant obtain disability benefits, and such a finding was inappropriate. *Id*. at 1253 (finding "that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician.").

Even if the ALJ properly denied controlling weight to the conclusions reached by Ms. Brown and Dr. Zielinski, he was nevertheless required to determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300 [quotation omitted]. Those pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted]. However, it appears that the only factor considered by the ALJ was the inconsistency between the assessment and the claimant's treatment records.

With regard to Dr. Miles's assessment of the claimant, the ALJ primarily rejected it based on the belief that Dr. Miles relied only on the claimant's subjective reports. Dr. Miles's report shows that she conducted some mental testing of the claimant and also relied on the claimant's history and reports of symptoms. It was not error for Dr. Miles to rely on this evidence. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Langley*, 373 F.3d at 1122 (both noting "that a psychological opinion may rest either on observed signs and symptoms or on psychological tests" and that observations about a claimant's functional limitations "do constitute specific medical findings."), *citing* 20 C.F.R. Subpart P, App. 1 § 12.00 (B). *See also Thomas v. Barnhart*, 147 Fed.Appx. 755, 759-60 (10th Cir. Sept. 2, 2005) (finding that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements[,]" and that when an ALJ rejects an opinion on such a basis, it "impermissibly put[s] the ALJ in the position of judging a medical professional on the assessment of medical data.") [unpublished opinion]. Furthermore, the ALJ was required to evaluate Dr. Miles's assessment using all the factors, and it appears that he did not. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, *see* 20 C.F.R. § 404.1527(d), although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion."), *citing Goatcher v. HHS,* 52 F.3d 288, 290 (10th Cir. 1995) [emphasis added].

Because the ALJ failed to properly analyze the opinions from Dr. Zielinski and Dr. Miles, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis. *See Watkins,* 350 F.3d at 1300 ("Treating source medical opinions are still entitled to deference and must be weighed *using all of the factors* provided in 20 C.F.R. § 404.1527.") [emphasis added], *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188. *See also Hamlin*, 365 F.3d at 1215 ("An ALJ must also consider a series of specific factors in

determining what weight to give *any* medical opinion."). On remand, the ALJ should reconsider the assessments in accordance with appropriate standards and determine what impact, if any, such reconsideration has on: (i) the claimant's credibility; and, (ii) the claimant's RFC.

## Conclusion

The undersigned Magistrate Judge finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Parties are herewith given ten (10) days from the date of this service to file with the Court Clerk any objections with supporting brief. Failure to object to the Report and Recommendation within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

**DATED** this 7th day of December, 2006.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**